The final case this morning is RennetX v. Cisco, 2019-16-71, Mr. Timofeyev again. Pitching in both ends of the double-header today. Indeed. Ioanna, and may it please the Court. As we said in our Rule 28J letter, our view is that the result of this Court's recent mangrove decision, the issues in this case are now narrowed to whether the Board was correct to find Claim 18 of the 135 patent to be obvious under the combination of Solana and Kiyuchi. And to submit that decision was erroneous. Before you go any further, I just want to make sure we know what's at stake. Until you filed your 28J letter, you thought you were challenging what remained of the 135 patent, that is, Claim 2 under Kiyuchi. I'm just trying to figure out which claims were the Kiyuchi-related claims and which claims are the Kiyuchi-Solana-related claims that were on appeal in your eyes before the 28J letter. Ioanna, there was an overlap. Because, for instance, Claims 1 through 4 were anticipated by Kiyuchi. Claims also 1 through 5 were found obvious under Kiyuchi and Solana. Our view is that, subsequent to the mangrove decision, we think that there were some claims like 5, 8, and 9 that were obvious under different combinations of Kiyuchi. So we think that, after mangrove decision, our view is that this is now limited to Claim 18. There was some question about Claim 2, but we think that the fair reading, just based on that claim, is that this appeal is now just about Claim 18, if that answers your question. And so it's just Claim 18 and just Kiyuchi-Solana as the grounds for possibly rejecting Claim 18? That is correct, Jack Chan. And just one maybe nuance is some of the arguments we made as to why the board was wrong with respect to the way it mapped the proxies onto the client computers, which we have with respect to the Kiyuchi anticipation rejections. Within this, I think we made clear in our blue brief, also, in fact, the board's analysis of Solana-Kiyuchi. So there's some intersection of the arguments, but we're not... Because mangrove decided that Kiyuchi discloses the direct communication VPN, we no longer are getting those subsidiary points with respect to the anticipation rejections on the Kiyuchi, even though they may be relevant to whether the board was correct in finding obviousness on the Solana-Kiyuchi. Okay, thank you. Of course. So with respect to that Solana-Kiyuchi combination, we submit that the board departed... from the examiner's basis for rejection. Because both here, both Cisco and the examiner relied on Solana as the reference disclosing the generating limitation in Step 1 of Claim 18. They relied upon Kiyuchi only some modification of Solana for Steps 2 and 3, which are the determining and then requesting access limitation. After Renetics identified various problems with this reliance on Solana, the board switched the thrust of the rejections. And at the point that even if Solana does not, open quote, disclose generating a DNS request, close quote, Kiyuchi discloses that feature. This is at Appendix 28. So then in your view, did the board convert the 103 into essentially a 102 Kiyuchi-based rejection? We think the board still conducted an obviousness analysis, but a deficient obviousness analysis, which is our second argument. Because I thought for Steps 2 and 3, you said that the board was relying on Kiyuchi. Yes, the board was relying on Kiyuchi as modifying Solana. But then with respect to Step 1, the board essentially, when we raised issues and showed in our view that that step was not obvious under Solana, even in the view of Kiyuchi, the board essentially pivoted to Kiyuchi as the principal reference disclosing that claim. And that was an entire new shift from how Cisco advocated from Cisco's request, and it was also a shift from the examiner's ramp. So we believe that it was a materially new rejection, and the board, we had no opportunity to respond to it. We think what is proper here is a Baker-Chen remand to the board, in particular so the board can analyze that Solana-Kiyuchi combination in light of the intervening guidance from this court in its first mangrove decision and also from the board itself in its mangrove decision on remand. Because those decisions make clear that Kiyuchi's proxies cannot be mapped onto the claim client computer and the target computer. Yet here the board relied on these Kiyuchi proxies as disclosing the claim client computer and the target computer as associated with the DNS request in Claim 1. What is left of the Kiyuchi-Solana for Claim 18? Oh, I guess you still have that final limitation in Claim 18. Yes, Your Honor. So what would happen theoretically if we affirm your prior appeal on Claim 18? Then what would happen to this appeal? I think this appeal then becomes moot because, again, our view is only Claim 18 is at issue here. So this appeal is moot. My answer to Judge Bryson in the prior appeal, again, I think then the proper course is to dismiss the appeal or to remand it to the PTO with instructions to vacate the decision is moot with respect to Claim 18. But we do acknowledge that this appeal would become moot if the prior appeal on 1523 is, you know, is affirmed. I believe the other side said that you somehow – is this the appeal? I'm sorry, where the other side is arguing that you've waived slash forfeited your right to make this specific argument in defending your claim because it wasn't part of your request for reconsideration to the board? Yes, Your Honor, we – Is that this appeal? This is this appeal. Okay. This is this appeal. There were several waived arguments. And then there was a non-presidential opinion that they cited as support for that proposition that when you choose to invoke the request for reconsideration procedure at the Patent Board, you must include any and all arguments that you would ultimately want to pursue on appeal to the Federal Circuit. Otherwise, you would waive such arguments. Yes, Your Honor. We have – and we have three responses. So one, which is I think the easiest, is that even though we only challenged, I believe, Claim 4 in the rehearing request, we actually challenged everything including Claim 18 and the arguments. The issues were presented in our blue brief in our request, subsequent request to the director for rehearing. So when the director issued the final decision for the agency, that request to him presented all the grounds. So we think, you know, there is – even under Polycom, there is no considerable waiver. We also – Polycom is a non-presidential decision. We think there is a significant question whether respectfully, you know, whether that is correct in these circumstances where – But personally, Polycom is very – maybe get in there. Isn't it a very different case? Because in that case, as I understand it, somewhat complicated, factual setting, the ground of rejection number one, which was at issue, was never raised to the court. I mean, and that seems to me very different from saying in that setting, yeah, you have to raise it if you want to litigate it in this court at some point. And that would have suggested raising it in the petition for rehearing at the latest. But that's very different from this case and from the great run of the cases in which a party may select one or more of the issues to focus on and request for rehearing, but not weigh all the rest of the issues. So, Judge Bryson, you actually just pushed me towards my third point, which is exactly that we – and we argued this in our gray brief – that Polycom is distinguishable on precisely that basis. Two different anticipation, obviousness, rejections would play. And I think this court in Polycom was concerned with a particular issue where the board didn't have an opportunity to opine on a particular issue. So, yeah, I was unable to find any case in any jurisdiction that stood for the proposition directly that if you don't include a particular issue in your petition for rehearing in the category of cases where that isn't required by statute or regulation, that you've weighed it. So I haven't found any. Did you find any authority for that proposition? We have not. Darby kind of speaks generally to this issue, but not specifically to this issue. Yeah, we think Darby does speak to the issue of the Supreme Court there. But again, in rejecting this kind of waiver basis, because we do think that it's a feature of the Administrative Procedure Act that, as you said, Judge Bryson, if a statute requires you to seek rehearing as a condition for obtaining the final agency decision, you have to do it. Otherwise, there is waiver of forfeiture. If a statute does not, you do not have to. And I think from a policy perspective, it would lead to a waste of agency resources, not to mention the parties' resources, if every time you have to seek rehearing, you have to include every single point you want to bring up. And the standard is different. I mean, the standard for agency reconsideration, they certainly vary. But in this case, you have to show a specific point that the panel misapprehended or misunderstood. It's not the general appellate standard where the court will look at the question of law, the question of fact, and the other standards. So we just think that it's – we have doubts about polycom, but this court doesn't even need to consider whether polycom, the precedential decision is binding here because it is distinguishable. So that's – I mean, that is our response on the waiver point. I would also mention the second argument as to why the board's analysis of the Solana-Kiyuchi combination needs to be vacated is because the board failed to adequately analyze the motivation to combine Solana and Kiyuchi with respect to the specific features of the issue. The board obliquely addressed the motivation to combine with respect to Step 3, which is determining the DNS request in Step 2 as requesting access to a secure target website. It did so on page 27. But there, as we argue in our blue brief, that analysis was stalky because Solana's system provides an end-to-end confidentiality, so all communications within it are secure. And you can see that is on Appendix 2043, I believe, in the examiner's findings. So there would have been no reason for someone still in the ARC to modify Solana where all transmissions are secure to determine whether DNS is requesting access to a secure website. Was Claim 18 for the Kiyuchi-Solana ground argued separately by you, or was there one representative claim for the Kiyuchi-Solana ground that was being debated between the parties? Glenn, I believe that in both our appeal brief to the board and also in the examiner's findings, Claim 18 was analyzed as Claim 18 on the combination of Kiyuchi and Solana. Some discussion may have been done to get with analysis of the other claims because, I guess you want to remark, the initial three limitations are common also to Claim 1, which is not an independent claim. I don't believe that there was a separate. I don't believe Cisco presented any arguments. I don't think the examiner addressed the separate limitation in Claim 18. This is your question, Judge Chan. But the examiner and the board looked at Claim 18 specifically. Counselor, there is plenty of rebuttal time. You can continue or save it. I will save it, my rebuttal time. Mr. Foster. Thank you, Your Honors. Theo Foster for Cisco Systems. Your Honors, the March Mangrove decision provides an alternative basis for this court to address this appeal, and we believe proper course is to dismiss the appeal in its entirety. The reasoning for that, I think, Counsel for EdX, is it acknowledged that the Mangrove decision disposed of Claim 1 and the dependent claims. Those are no longer at issue in this case. Claim 18 merely recites the same limitations as the combined Claim 1, Claim 2, and Claim 5 that the board had found either anticipated by Kiyuchi or obvious over Kiyuchi in view of Dalton. But Claim 5 does not depend from Claim 2. It depends from Claim 1. So technically, the invalidation of Claims 1, 2, and 5 don't get you there to necessarily conclude that a combination of all three claims is also invalid. Judge Chen, you're correct. Claim 5 does not depend from Claim 2, but Claim 2 was found anticipated by Kiyuchi. Claim 2 also depends from Claim 1. And so we believe that the collective findings there of the teachings of Kiyuchi plus Dalton— Did you send a 28-J letter? We did not send— When did you learn about the Mangrove decision from March 2023? We learned about the Mangrove decision not long after it issued. We only learned that— Yes, Your Honor. The reason we did not is because we have taken a slightly different position than the patent owner in this case regarding when the decision from the Federal Circuit is considered to be final after all appeals. And the patent owner had indicated to us that they planned to seek cert review of that Mangrove decision, and they only just filed and provided their briefing on that cert petition to us last week. And so we didn't have an opportunity to see that they had abandoned any challenge to the merits of the Kiyuchi rejections that were affirmed in Mangrove. And so there was not time. I was—around the same time that we received the Rule 28-J letter last week, I was realizing that with their filing and the issues they had attempted or had put into their cert petition that they were waiving their invalidity merits with respect to Kiyuchi. So you're saying the position you're taking this morning springs from their Rule 28-J letter, which was just filed late last week? Yes, Your Honor. In combination with their petition for cert to the Supreme Court, which I believe was just filed the week before but was not docketed at the court and made available to us until last week. How does that cert petition influence your willingness or unwillingness to take the position you're taking today? Your Honor, in their cert petition, they contest only a few procedural matters, and they are no longer disputing that Kiyuchi anticipates the claims on the merits. They're disputing whether or not they received a proper direct review from the Patent Office. And so it's not terribly unlike the situation that arose between Vernetics and Apple several years ago, and there was a dispute as to whether or not the availability of a cert petition would preserve Apple's ability to argue invalidity in reexamination. And Apple had argued that because it still maintained a possibility of seeking cert review of the entirety of its trial case, that it was not subject to estoppel from the intrapartite reexamination that it was pursuing. And we had understood substantially the same sort of position. And so it wasn't until we saw their cert petition abandoning those invalidity arguments on the merits that we saw Mangrove's. Could you address the question of whether you think that the decision in the March Mangrove case affects the validity of the Board's conclusion with respect to the client computer construction issue? Sure. I would first answer that I think this Court can affirm, although in view of the procedural setting it's not necessary, but this Court could affirm the Board's decision even though it did not adopt that construction of client computer as a user's computer. Because on the record here and the arguments... The Board did not. Right, the Board did not have the benefit of either of the Mangrove decisions, but certainly not the benefit of this March's Mangrove decision. So really, why wouldn't the proper course be since they'd send it back to the Board to make the determination as to whether that question ends up resolving the case? As opposed to our struggling with a construction that is arguably incorrect now in light of the March Mangrove case to decide that nonetheless that the decision can be affirmed. Your Honor, first, we would dispute that that construction is incorrect, but... Well, that's what I was hoping you would tell me. Why do you think, as I understand it, that a Mangrove case essentially comes down with a construction and the Board declines to construe the term? Why isn't that a distinction that is at least telling the Board that it has to come take another shot at client computer? Well, Your Honor, remanding for the Board to take another shot in this instance I think would essentially be moot because it's a question of what is the Board going to do except adopt the analysis of Kiyuchi, the same reference that was issued in the Mangrove decision. Which is a different analysis than it used before. It would be a different analysis, but it's the same outcome still leading to anticipation of Claim 1 and various dependent claims by Kiyuchi. That's the part that would require us to do the work that arguably ought to be done by the Board in light of the correction of the claim construction. But you were saying before, I think, that you didn't think that the Board's claim construction is wrong? Yes, Your Honor, I was saying... Your perception of failing to construe is wrong in light of what we've held? Your Honor, we believe that the construction affirmed in the Mangrove decision in March is not correct. We would point to the specification... Well, so you think that our decision in March was wrong with respects to the construction of planned computer and what should we do about that since we can't overturn the decision made in March? Yes, Your Honor, I understand that as a panel decision... So let's assume for the purpose that we'll take the decision in March as being correct. Okay? Yes, Your Honor. Now, the question then is, that means that what the Board did is wrong, correct? That means that the Board's... On that issue, on the planned computer issue. That means that the Board's analysis here, the Board's decision not to formally construe planned computer and to read the limitations from the specification into the claim about user's computer, that the Board's analysis with respect to that is inconsistent, which, to use your term, I will say wrong, under the Mangrove decision. Okay. And then the next question, of course, is the one we started with, which is why, under those circumstances, wouldn't the appropriate action be for us to send it back to the Board and get the Board to tell us what the Board's construction and the Board's understanding of the case is, the disposition of the case, rather than our trying to sort that out. That's normally an error of that sort, but it leads to sending it back to the Board to make a determination as to how it would come out. You say that's not necessary here. Explain to me why. Your Honor, we don't believe it's necessary because any further analysis by the Board is essentially moot. As the patent owner acknowledges, Claim 1 is already slated for cancellation, and the patent owner to this Court has not raised any arguments with respect to the dependent claims from Claim 1. So your argument against a remand is entirely based on the combination of 1, 2, and 5 as obviating any chance of a teen survival, right? Yes, Your Honor. Okay. I'm sorry. Before you go, there's an argument that it was a new ground of rejection, what the Board did with the Kiu-Chi Solana by pivoting to relying on Kiu-Chi for the generating step. And is that true in your view that the examiner's rejection relied on Solana for that limitation, but then the Board itself independently chose to rely on Kiu-Chi? With respect to the Solana in view of Kiu-Chi rejections, yes, the examiner's analysis had relied on Solana, and the Board in its decision didn't say that that analysis was wrong, but it also didn't exactly put its stamp of approval on it. Right. And it went over and picked on, relied on Kiu-Chi for that limitation. Yes. So isn't that a new ground of rejection? I would argue it's not a new ground of rejection because the rejection of, and the question of Kiu-Chi's teaching of that same limitation had been part of this very same appeal with respect to the other rejections. And so there's not, you know, a new or different finding there. I think it's just an alternative analysis. I don't remember that in the Red Group. I recall your Red Group sending to make an argument that they forfeited this argument that it's a new ground of rejection because, by regulation, they were required to request reconsideration for a non-designated new ground of rejection made in the Board decision to have it designated as a new ground, and they didn't file that request, and so therefore they're not permitted to make that argument on appeal. That was the argument I thought I saw you make. Yes, Your Honor. And Burnettix identified in its opposing brief, in the gray brief, that the regulation we had pointed to pertained to ex parte reexaminations, and this is an inter partes reexamination. Right. So what that means is I don't see anything in your red brief that actually makes the second alternative argument in defense of this rejection as being, in your view, not a new ground on the merits. Yes, Your Honor. The Board's analysis, right, the Board didn't say what the examiner did was wrong, but the Board also didn't affirm or adopt the examiner's analysis. The other side has told us that all that is at stake in this appeal in light of what happened in the March 23 Mangrove opinion is Claim 18, and that if we were to affirm the other appeal, then that would moot the decision here on Claim 18. Do you agree with all of that? Yes. And with respect to the questions that have come up in argument today regarding the proper next step, if the appeal is rendered moot because of invalidity findings from co-pending cases, I direct the Court to cases such as Facebook versus Windy City, where there was a very similar situation and the proper remedy was not vacatur. It was to dismiss the appellant's appeal with respect to those claims where the questions of invalidity had been rendered moot. Substantially the same thing the Court did in Intuitive Surgical versus Ethicon. That's 25 Fed 4th, 1035. And then an older case that was not Presidential Secures versus Global Tellink. That's 685 Fed Appendix. What was the citation? Citation for the last one. Secures versus Global Tellink, 685 Fed Appendix at 979. In all of those cases, the Court dismissed the appeal when the claims at issue had been rendered invalid by co-pending cases or cases that were decided during the dependency appeal. I'm not sure all of our decisions have been timed consistently in this regard. I was not able to find any cases where the Court had vacated. When the Court had vacated? The decision below where the claims had been found unpatentable. Oh, I see. I'm limited to that set of cases. Okay. Anything further, counsel? No, if there are no further questions. Thank you, Your Honor. Thank you, Mr. Tinfayev has two minutes plus. Thank you, Your Honor. Just to clarify on the cert petition, I mean, our position is not that the cert petition somehow deprives this Court's decision of its collateral estoppel effect. I mean, it may be a question whether the Board's decision is entitled to immediate collateral effect, but certainly on the next linear in the other cases, and just general jurisprudence this Court says. Our cert petition challenges, the main issue we challenge there is whether in Mangrove the Board properly joined Apple as a party to Mangrove's earlier filed petition. And we argue that if that joint was statutorily improper, then the entire proceeding has to be restarted anew, which would eradicate all of the Board's findings in that case. I think, you know, on the impact of this Court's first Mangrove decision, and then the Board's decision in Mangrove on remand, we think that the Board's analysis here is just not reconcilable with those. I think, you know, both this Court's decision, but also then the Board's finding on remand, very clearly says that the client compute is not the same as a client-side proxy. So in addition to, you know, the Board here reconsidering this decision like this Court's guidance, we think it actually has to consider what another Board panel did in Mangrove on remand, because the agency cannot come to totally different conclusions with respect to the same patent. With respect to the collateral estoppel effect from the combination of claims 1, 2, and 5, the Board's finding here was that, you know, the Board rejected our argument that there was a direct connection VPN because it found direct connection between the proxies, which we don't dispute. We think because this Court in Mangrove affirmed the finding of direct connection VPN disclosure on a different basis, that's why we think there's a collateral estoppel on the fundamental issue of direct connection VPN here. But it doesn't mean that the subsidiary issue, such as whether the client computer is, you know, a client proxy, or, you know, whether it's a user agent, that there's any kind of estoppel for that. And then the last point, you know, like the, I mean, as I think, you know, my friend admitted, I mean, when the Board does not adopt the examiner's rejection, does not put its own stamp on approval, I mean, that, it seems to us, by definition, a new ground of rejection, and the appropriate course of action for that is to remand to the Board, so the Board can analyze the combination properly in light of this Court's guidance. Before you go, your second to last point that you just made on the QG only rejections, or QG and some other reference that's not Solano, my understanding was that any remaining claims like 2-5-6, others are no longer live questions for purposes of this appeal, in light of what happened in the March 23 mangrove decision. And so far, for your purposes, the only live claim left on this appeal is Claim 18, and then the QG-Solano combination against Claim 18. Is that correct? That's what I heard you say last time. Yes, Your Honor, that is correct. And because some of the claims have not been found unpatentable as a result of this Court's latest affirmance in mangrove, so then any questions as to the validity of those claims are moot. And then there are some other claims, like Claims 2 and 5, which depend on claims, but because this Board invalidated those claims on the basis of finding a direct connection VPN disclosure, we think there is a collateral estoppel as to that fundamental issue, even though the basis for that finding in our view was incorrect, but nevertheless that is the finding that also this Court affirmed in mangrove. So could I just hear you one more time explain why, if we were to affirm a rejection of Claims 1, 2, and 5 under QG, why doesn't that necessarily render Claim 18 unpatentable? Claim 18, it both has a different additional limitation, and also because the rejections of those claims, 1, 2, and 5, and the others were on the basis of QG, so it's an anticipation rejection, at least for independent Claim 1. The basis for the Board's rejection of Claim 18 here was an obviousness. It's a different analysis, Your Honor, in our view. So even though the full consequence is a conclusion that QG teaches everything in Claim 1, everything in Claim 2, everything in Claim 5, and then by logic perhaps everything in Claim 18, since they all share the same limitations, the rejection in front of us today is a QG solana, not a QG. And so for that reason, we wouldn't be able to just straight up affirm on Claim 18. That is our view, Your Honor, and certainly because Claim 18, which is an independent claim, also has that additional limitation, which is not present in Claim 1, which was held unpatentable. Thank you, counsel. I think we have your arguments in the cases submitted. Thank you, Your Honor. That concludes today's arguments.